## John J. Haley *vs.* Dorchester Mutual Fire Insurance Company.

A policy of insurance on " stock in trade, being mostly chamber furniture in sets a.id other articles usually kept by furniture dealers," based on an application, which is made part of the contract, for insurance on "household furniture, being my stock in trade, mostly chamber furniture in sets," covers paints and varnish used to finish the furniture, if usually kept by furniture dealers; even if the by-laws to which the policy is made subject provide that the application shall be approved by two directors; and is not avoided by having on the premises as much varnish as is usually kept by furniture dealers, although it is an inflammable substance, and the insured, in answer to a question in the application, whether any explosive or highly inflammable matter was kept near or in the premises, answered " Not to my knowledge."

In an application for insurance, which provided that questions not answered should be construed most favorably to the risk, the applicant left unanswered a question whether there was any livery stable in the vicinity. In an action on the policy of which this application was made part, the jury were instructed that if there was a livery stable in the vicinity at the time of the application, they were to determine what was the meaning of the question and of the word " vicinity ; " and whether there was a livery stable in that vicinity, having reference to the situation of the building in which the property insured was situated, the situation of other buildings, and the locality, as ascertained from the contract and evidence. *Held*, that the defendants had no ground of exception.

In an application, made part of a policy of insurance on property in the second story of a large building, and providing that the description therein given is a full and true description of the property to be insured and of all circumstances in relation thereto, material to the risk, and that the questions not answered .shall be construed most favorably to the risk, an omission in answer to the question, " Who occupies it ? " to state the occupation and occupants of all the rooms, does not avoid the policy, if the jury are satisfied that those not disclosed make the risk less hazardous than it would have been if the whole building had been occupied as stated in the answer.

Under a policy of insurance for $2000 on property insured elsewhere for $3000, which provides that " when property is insured by this company solely, three fourths only of the value will be taken, and in cases of loss this company will be liable to pay three fourths only of the value at the time of the loss," and that, " in case of loss or damage of property upon which double insurance subsists, the company shall be liable to pay only such proportion thereof as the sum insured by this company bears to the whole amount insured thereon, such amount not to exceed three fourths of the actual value of the property at the time of the loss," the underwriters are not liable for more than two fifths of three fourths of the value of the property.

Action of contract upon a policy by which the plaintiff was insured " against loss or damage by fire, under the conditions and limitations expressed in the by-laws " of the defendants, annexed to the policy, on his " stock in trade, being mostly chamber furniture in sets and other articles usually kept

VOL. XII. 35

by furniture dealers, contained in second story of the building known as Gerrish Market in the City of Boston, on Portland Street, corner of Sudbury Street, $2000; and other insurance of $3000 subsists; with liberty to have and make further insurance to an amount being not more than three fourths of the value of the property described in the application of the said insured dated the thirtieth day of October 1855, which application is lodged with the secretary of this company and shall form part of the contract to be taken in connection with this policy."

Among the by-laws annexed were the following: ART. 1. "The object of this corporation is to insure such dwelling-houses and other buildings with their contents and such personal property as shall not be generally considered extrahazardous, and to insure upon those only which are ordinarily considered as first class risks." ART. 2. "The company may make insurance for the term of five years; but a greater amount than three thousand dollars shall not be taken on any one risk, or on separate risks where the buildings or property are so situated as to render the same in effect equivalent to a single risk. When property is insured by this company solely, three fourths only of the value will be taken, and in cases of loss this company will be liable to pay three fourths only of the value at the time of the loss, but in no case more than is insured by this company. But in case of partial losses on real estate, this company will pay the full amount." ART. 8. "In case any other insurance, prior or subsequent, shall subsist upon property insured by this company, the policy issued by this company shall be deemed and become void, unless such other insurance subsists with the consent of the directors, signified by a statement thereof in the policy, or by indorsement thereon, signed by the secretary; and in case of loss or damage of property upon which such authorized double insurance subsists, this company shall be liable to pay only such proportion thereof as the sum insured by this company bears to the whole amount insured thereon, such amount not to exceed three fourths of the actual value of the property at the time of the loss." ART. 16. "Unless the applicant for insurance shall make a true representation in writing of the

property on which he requests insurance, and of his title and interest therein, of its situation, and of all other matters materially affecting the risk, also all incumbrances, the policy shall be void." ART. 24. " All applications shall be approved by two directors, and no director shall approve an application for insurance on property in which he is in any way interested."

The application was for insurance " on household furniture in the second story of the Gerrish Market, being my stock in trade, mostly chamber furniture in sets; " and provided that " all the questions must be answered," and that " the answers to the following interrogatories shall form the basis of the contract for insurance, and the applicant warrants them to be entirely true, and will be bound by them." " 8. Is cotton waste, or any explosive or highly inflammable matter, kept near or in the premises on which this insurance is applied for ? " *Answer.* " Not to my knowledge." " 11. Are there any other circumstances material to the risk : if so, what are they ? If there be a livery stable or steam engine in the vicinity, state how near to the risk." *Answer.* " There is a small steam engine in the fourth story." " 14. Who owns the building to be insured or which contains the property to be insured ? " *Answer.* " George W. Gerrish." " 15. Who occupies it ? " *Answer.* " Market-stall men ; self; White & Co., polishers; Barnard & Dillingham, painters ; Sanborn, Carter & Bazin, bookbinders, and one ornamental do." And " the said applicant hereby covenants and agrees with the said company that the description herein given is a full and true description of the property to be insured and of all circumstances in relation thereto, material to the risk, and that the estimated valuation shall not be conclusive upon the company; but in case of loss the true value at the time of loss may be inquired into and ascertained ; the questions not answered above shall be construed most favorably to the risk; and that said applicant shall be bound by the provisions of the constitution and by-laws annexed to the policy, and all laws of the Commonwealth of Massachusetts in relation to the premises, as a part of this contract for insurance."

At the trial in the superior court of Suffolk at May term 1857

before *Huntington,* J., it appeared that the Gerrish Market building was a very large building, in which a great variety of business was carried on under a great number of tenants; that, from the time of the application for insurance to that of the fire, the premises occupied by the plaintiff consisted of a large hall or salesroom and three rooms adjoining, a paint room, varnish room, and store or packing room; the furniture was made at another establishment or manufactory, sent up to the salesroom " in the white" or unpainted, and varnished, painted and trimmed in the rooms adjoining the salesroom; and a quantity of varnish, oils and paints was kept in the premises for use in finishing the furniture. There was no evidence of any intention on the part of the plaintiffs to conceal or neglect to make inquiries about the occupation. The whole stock was consumed by fire on the 12th of April 1856.

There was evidence tending to show that it was usual for furniture dealers in Boston to keep varnish as part of their stock, and that varnish was a highly combustible matter. The plaintiff introduced evidence tending to show, that varnish kept in casks was not a combustible or highly inflammable material, and also that some furniture dealers sold furniture "in the white" to other dealers, to be painted, varnished and sold by them.

The defendants objected that the policy covered only the stock of furniture finished, and did not extend to the paints or varnish or any other articles; and introduced evidence that several of the answers in the application were not true, and that some questions were not fully answered, and others not answered at all.

The judge ruled " that the contract of insurance covered the furniture of a furniture dealer, and such other articles as were proved to be usually kept by furniture dealers, and necessary to the pursuit of the plaintiff's business; and that it was not confined to household furniture, mostly chamber furniture in sets, as the defendants contended, but might include the other articles usually kept by furniture dealers, as stated in the body of the policy: That in order to recover for the varnish and oil destroyed,

the plaintiff must show that such articles were usually kept by furniture dealers; that the jury were to inquire to what amount they were usually kept; and that the plaintiff would not be entitled to recover more in value than the usual amount, taking into consideration the nature and extent of the plaintiff's business and the quantity of furniture on hand: That the declarations, representations and statements in the application, so far as they related to the risk, were warranties, and no matter whether material or immaterial to the risk, if untrue, whether from design, ignorance or mistake, it would be fatal to a recovery by the plaintiff; that they were made the basis of the contract, and were to be construed according to their true spirit and real meaning; that they were to be read fairly and not captiously: That so far as no answers were given to questions in the application, they might find that the company waived such answers, but that the company must have the benefit of the provision in the contract that such omission should be construed most favorably to the risk; and if there was any material concealment, or concealment of a material fact, it would avoid the policy: That as to the answers given to specific questions, the meaning of the language as to both was to be determined by common use and acceptation, and by all the other provisions of the contract touching the same subject matter, and by the different answers themselves; that if a misstatement could have no possible relation to the risk, it would not affect the policy; that the clause as to explosive substances would not be violated in having on hand so much varnish and oil as were necessary in carrying on the business of a furniture dealer, and in such quantities as were usually kept, under the former limitations; and that the jury, in determining whether this question was answered truly, might refer to the answers made to another question as to the occupation of the building; and that as to the answer relating to the livery stables, the jury were to inquire whether it was proved that there was a livery stable in the vicinity at the time of the application; (the plaintiff contending that the evidence did not apply to that time but to a subsequent period;) and that if it was so proved, they were to determine

what was the meaning of the question, and of the word ' vicin-
ity,' and whether there was a livery stable in that vicinity, hav-
ing reference to the situation of the building, in which the
property was situated, the situation of other buildings, and the
locality, as ascertained from the contract and evidence." As to
the question in regard to the occupation of the building, there
being evidence tending to show that at the time of the applica-
tion there were occupants in one or two rooms of the building
not named in the answer, besides the general instructions given,
the jury were also instructed, " that if there were such occupants,
not mentioned in the answer, the omission would not necessarily
avoid the policy, if the jury were satisfied that by such occupa-
tion the risk was less hazardous than it would have been if the
occupation and occupants were all such as stated in the answer;
and that the purpose of the inquiry was to be borne in mind.

On the question of damages, the jury were instructed, " that
the defendants were liable, if at all, for such proportion of the
loss or damage as the sum insured by them bears to the whole
amount insured on the property, subject to double insurance, not
exceeding three fourths of the actual value ; taking care, how-
ever, that the plaintiff should not recover in any event, more than
three fourths of the value of the property covered by insurance
with interest after ninety days from notice of loss."

The jury returned a verdict for the sum of $2,106.67, and found
under directions of the court, specially, the value of the property
insured to be $5,917.25. The amount of the whole insurance
was agreed to be $5000. The defendants alleged exceptions.

*J. L. English,* for the defendants. 1. Nothing but a stock of
household furniture was insured ; not paints, varnish or other
articles. The application does not include such other articles,
and the president and secretary were not authorized to issue
policies except upon application approved by two directors.
The directors would not, under the first by-law, have insured
paints, oils or varnish. So far therefore as the policy describes
property other than and different from that mentioned in the ap-
plication, it did not attach.

2. The untrue answer as to explosive or inflammable sub-

stances avoided the policy, and the jury should have been so instructed.

3. The jury should have been instructed differently as to the meaning of the word " vicinity" in the answer to the question about livery stables. The jury were in effect instructed that they were at liberty to find that the existence of a livery stable on the opposite side of the street or in an adjoining building need not have been disclosed.

4. The instructions as to the answer about occupation left the jury at liberty to disregard the evidence of nondisclosure of occupants of other parts of the building and their business. It was admitted there were others not disclosed, and the directors who approved the risk were misinformed in this particular. The answer in effect was that there were no others.

5. The instructions as to damages were wrong. The plaintiff is entitled to recover only two fifths of three fourths, or three tenths, of the loss. By the policy not more than three fourths in value of the property was to be insured by all policies together.

*H. F. Durant,* (*J. P. Healy* with him,) for the plaintiff, being directed by the court to speak to the question of damages only, cited *Heath* v *Franklin Ins. Co.* 1 Cush. 261; *Huckins* v. *People's Mutual Fire Ins. Co.* 11 Foster, 249.

BIGELOW, J. The instructions to the jury were carefully guarded and sufficiently favorable to the defendants, with the exception of that which relates to the subject of damages. This was founded on what seems to us to be a misinterpretation of the by-laws. The defendants did not assume a liability in case of the existence of other insurance on the property to be ascertained solely by calculating the proportion what the sum insured by them bore to the whole amount insured on the property. The basis of calculation was in all cases to be the value of the property insured after deducting one fourth of such value. Of this sum the defendants were to pay such proportion as the sum insured by the policy issued by them should bear to the whole sum insured by all the policies existing on the property at the time of the loss. In other words, the defendants were to be liable only for their proportion of three fourths of the value of

the property insured; and this proportion was to be ascertained by calculating the ratio which the sum insured in the policy declared on bore to the whole sum insured by all the policies existing on the property. Thus, if the whole property at the time of the loss amounted to ten thousand dollars, the sum on which the liability of the defendants must be reckoned would be three fourths of ten thousand, or seven thousand five hundred dollars; and of this last sum the defendants could be held to pay only the proportion which the amount insured by them, viz: two thousand dollars, bore to the whole sum insured, viz: five thousand dollars; or two fifths of seven thousand five hundred dollars, which would be three thousand dollars. But as this last sum exceeds the whole amount insured by the defendants, it would be cut down to that amount, and the plaintiff could recover only two thousand dollars. This is the clear result of an analysis of the provisions of the by-laws. The second by-law is limited to cases where the defendants are sole insurers on the property. It limits their liability in the first place to three fourths of the value of the property, as stated in the policy; and in the next place it provides for a further limitation by cutting down the amount to which the plaintiff would be entitled to three fourths of the value of the property at the time of the loss, if that happens to be less than the amount stated in the policy. Then comes the eighth by-law, which provides for the case of double insurance. By this it is stipulated that the defendants shall be liable to pay only such proportion of the loss " as the sum insured by this company bears to the whole amount insured thereon, such amount not to exceed three fourths of the actual value of the property at the time of loss;" that is, the amount insured by the defendants and all other insurers, for the purpose of ascertaining the extent of the defendants' liability, is not to be allowed to exceed three fourths of the value of the property at the time the loss occurs. The purpose of this provision is obvious. It is to carry into effect the provisions of Rev. Sts. *c.* 37, § 28, which enacts that mutual fire insurance companies shall not insure property for a sum exceeding three fourths of its value. The effect of the eighth by-law is, that in ascertaining

the liability of the defendants on a policy issued by them, in cases where there is other insurance, the property is to be taken at three fourths of its value, and the proportion which the defendants are to pay is to be reckoned on that basis.

It is suggested by the counsel for the plaintiff, that the effect of this interpretation of the by-laws is to restrict the plaintiff from obtaining insurance on his property by other insurances for a sum greater than three fourths of its value. But this is an error. The purpose and effect of the by-laws are only to require that, in calculating the liability of the defendants according to the agreed proportion, it is to be assumed that the property was insured only for three fourths of its value.

Inasmuch as the instructions on the subject of damages did not conform to this view of the liability of the defendants, there must be a new trial on the question of damages; and for this purpose only the order is to be                    *Exceptions sustained.*

Upon a new trial, it appearing that part of the property insured by the defendants was not covered by the other insurance, it was held that the plaintiff might recover three fourths of the value of that part of the property, and three fourths of the value of so much as was covered by the other insurance, not exceeding $2000 in all.   1 Allen, 536.